Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

YVONNE RAMOS,

                  Plaintiff,

        v.

THE DERMOTOLOGY GROUP,

                  Defendant.

Civil Action No. 19-17404 (ES) (ESK)

OPINION

**SALAS, DISTRICT JUDGE**

    Before the Court is plaintiff Yvonne Ramos's ("Plaintiff") letter filed on May 4, 2021, regarding Plaintiff's complaint against defendant The Dermatology Group ("Defendant") for its disability discrimination violations under the Americans with Disabilities Act of 1990 ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD"). (*See* D.E. No. 9; D.E. No. 1 ("Complaint" or "Compl.")). The Court treats Plaintiff's May 4, 2021 letter as a renewed motion for default judgment. (D.E. No. 9 ("Motion")). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiff's Motion is DENIED.

**I.    BACKGROUND**

    The Court detailed Plaintiff's factual allegations in its Order dated April 16, 2021, and thus will not repeat those allegations to such full extent herein. (*See* D.E. No. 8 ("April 2021 Letter Order")). To briefly summarize, Plaintiff worked for Defendant from 2003 to January 2018,[1]

---

[1]     Plaintiff previously worked for The Dermatology and Laser Group, which was purchased by Defendant on July 1, 2015. (Compl. ¶ 25).

1

during which time her job duties expanded from being a patient service representative and office manager at Defendant's Livingston location to also being responsible for office management and billing at Defendant's other locations. (Compl. ¶¶ 20 & 25–30). Plaintiff alleges that her workload eventually became "excessive and unreasonable," which "exacerbated symptoms of Plaintiff's stomach ulcers." (*Id.* ¶ 31). In early January 2018, Plaintiff made a request to step down from her role as office manager. (*Id.* ¶ 32). According to Plaintiff, Defendant's employee essentially ignored Plaintiff's request. (*Id.* ¶ 33). On January 24, 2018, Plaintiff made another request to step down as officer manager because of her health. (*Id.* ¶ 34). Two days later, on January 26, 2018, Plaintiff was terminated for "not fulfilling her role." (*Id.* ¶ 37). Accordingly, Plaintiff alleges that Defendant unlawfully terminated her "due to her disability of peptic ulcers." (*Id.* ¶¶ 38–39). Defendant has not appeared nor submitted any pleading before the Court.

After Plaintiff filed a request for an entry of default, the Court issued a Letter Order notifying Plaintiff of the legal standard and the various factors the Court must consider before granting any default judgment. (D.E. No. 6 ("June 2020 Letter Order")). The Court also informed Plaintiff that, to the extent she wishes to seek default judgment, she must submit a brief specifically addressing the legal standard and the relevant factors. (*Id.*). Plaintiff subsequently filed a motion for default judgment, which fell woefully short of meeting the standard required to obtain a default judgment. (D.E. No. 7). On April 16, 2021, the Court issued a Letter Order again setting forth the requisite legal standard and specifically identifying several exemplary issues, such as certain pleading and service deficiencies. (April 2021 Letter Order). The Court thus denied Plaintiff's first motion for default judgment and, given the nature of the various deficiencies, many of which may not be curable through further briefing, the Court permitted Plaintiff to file a letter specifying how she intended to proceed further. (*Id.*). That is, whether Plaintiff intended to amend her

complaint and re-serve Defendant. On May 4, 2021, Plaintiff filed the instant Motion, which purports to address the deficiencies the Court identified in its April 2021 Letter Order.

## II. DISCUSSION

As outlined in the Court's prior Letter Orders, before entering default judgment, the Court must assess jurisdiction, service of process, the sufficiency of cause of action as stated, and the propriety of granting a default judgment. (*See* June 2020 Letter Order; April 2021 Letter Order). Because the Court finds that Plaintiff fails to show sufficient proof of service and because she fails to explain how she has sufficiently stated any cause of action, it will deny the motion. However, the Court will deny the Motion without prejudice and, as set out more explicitly below, allow Plaintiff one final opportunity to proceed with her claims.

### A. Service of Process[2]

As the Court identified in its April 2021 Letter Order, Plaintiff failed to establish that process was properly served on Defendant when a copy of the Complaint and the summons were served on Nathan McBrayer, "the interim CFO for Defendant." (April 2021 Letter Order at 3). Specifically, the Court pointed out that Plaintiff failed to provide any legal basis to support that service on an "interim CFO" satisfies the requirements under the Federal Rule of Civil Procedure 4(h)(1)(B). (*Id.*). In her Motion, Plaintiff argues that "process may be served under Rule 4(c)(2)(C)(i), (hereinafter 'state-law service provision'), which permits service of process in accordance with state law." (Motion at 1). Plaintiff then cites to Pennsylvania Rules of Civil Procedure and summarily argues, with no case law support, that service "was proper under Federal Rule of Civil Procedure Rule 4(c)(2)(C)(i)" because "Mr. McBrayer was an officer, partner,

---

[2] As discussed above, the Court has repeatedly set forth the legal standard applicable to Plaintiff's motion for default judgment in its June 2020 Letter Order and April 2021 Letter Order and therefore will skip to the legal analysis in this Opinion. (*See* D.E. Nos. 6 & 8).

manager, trustee, managing or general agent of Defendant." (*Id.*). There is no "Rule 4(c)(2)(C)(i)" in the Federal Rules of Civil Procedure and the Pennsylvania Rules of Civil Procedure are inapplicable to the instant matter. Plaintiff's entire argument regarding service of process is thus based on incorrect legal authority.

The applicable rules governing service of process for corporations are Federal Rule of Civil Procedure 4(h) and New Jersey Court Rule 4:4-4(a)(6). More specifically, Federal Rule of Civil Procedure 4(h)(1)(B) provides that service on a corporation, partnership, or association may be achieved in the following way:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—[i]f the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Alternatively, Federal Rule of Civil Procedure 4(h)(1)(A) allows for service pursuant to New Jersey state law. The pertinent part of the New Jersey Court Rules provides that service upon a corporation can be made as follows:

> by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

N.J. Ct. R. 4:4-4(a)(6). Thus, while the Federal Rules of Civil Procedure and New Jersey Court Rules both permit service on officers, managing agents, and general agents, New Jersey law governing service on corporations is much broader.

4

Here, personal service was made on Mr. Nathan McBrayer, "the interim CFO for Defendant, at Defendant's corporate headquarters." (Motion at 1). The issue before the Court is whether Mr. McBrayer, as an *interim* or *temporary* employee in this position, could properly receive service. Whether an individual is a managing or general agent "depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are sufficiently necessary to the corporation's operations. He should be a responsible party in charge of any substantial phase of the corporation's activity." *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3d Cir. 1971) (internal citations omitted). The Court recognizes the CFO in any business typically "perform[s] duties which are sufficiently necessary to the corporation's operations," and therefore, it could be fair and just to imply a CFO's ability to receive process. The issue, then, is whether Mr. McBrayer's interim status affects his authority within Defendant's organization. *See Douglas v. Univ. of Ky. Hosp.*, No. 2006-2149, 2008 WL 2152209, at *5 (Ky. Ct. App. May 23, 2008) (holding that service was improper on a temporary employee who was not designated as the defendant's agent); *Bober v. Kovitz, Shifrin, Nesbit*, No. 03-9393, 2005 WL 2271861, at *6 (N.D. Ill. Sept. 14, 2005) (finding that service on a temporary executive administrative assistant was improper because, as someone "who had spent only a short period of time at her position," the employee "was not a person likely to know the import of the service of legal process or what her responsibilities to the corporation would be in regards thereto"). Merely stating, as Plaintiff does, that "Mr. McBrayer was an officer, partner, manager, trustee, managing or general agent of Defendant" is thus an inadequate explanation of McBrayer's authority to accept service. (*See* Motion at 1). Plaintiff must specifically address this issue with sufficient factual and legal support.[3]

---

[3] To the extent that Plaintiff relies on New Jersey law, which allows service "on a person at the principal place of business of the corporation," Plaintiff shall also provide factual and legal basis to support that: (i) service cannot be

If Plaintiff decides that she can provide sufficient factual and legal grounds to support that Mr. McBrayer was an appropriate individual to receive service on behalf of Defendant, Plaintiff must include those facts and applicable case law in any subsequent renewed motion requesting default judgment. The Court again reminds Plaintiff that this is the third and final time the Court will be identifying the appropriate legal standards for Plaintiff, and Plaintiff will not be permitted another attempt at meeting her required burden.[4]

### B. Sufficiency of the Causes of Action

Plaintiff asserts the following causes of action: (i) retaliatory termination under the ADA;

---

made on any of the persons identified under New Jersey Court Rule 4:4-4(a)(6); and (ii) Defendant's "corporate headquarters" is its principal place of business. *See* N.J. Ct. R. 4:4-4(a)(6).

[4]     The record also indicates that Defendant was not timely served. Under Federal Rule of Civil Procedure 4(m), a defendant must be served "within 90 days after the complaint is filed." Here, Plaintiff filed her Complaint on August 29, 2019. (Compl.). Plaintiff first attempted to serve Defendant two months later on October 30, 2019, when she mailed a copy of the Complaint and a waiver of service, without the summons, to Osato Chitou, Defendant's Chief Legal and Compliance Officer, at Defendant's "corporate address." (Motion at 1; D.E. No. 5-3, Exhibit C). Because Defendant did not waive service nor respond to Plaintiff's letter, Plaintiff's service attempt conducted in October 2019 was unsuccessful. *See* Fed. R. Civ. P. 4; N.J. Ct. R. 4:4-3. Plaintiff then served Mr. McBrayer on December 6, 2019. (Motion at 1). At that point, Plaintiff had missed the 90-day timeframe, which ended on November 27, 2019.

When service is untimely, the Court—"on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Rule 4(m) requires "a court to extend time if good cause is shown and [allows] a court discretion to dismiss or extend time absent a showing of good cause." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995) (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995)). In exercising its discretion to extend time for service retroactively where good cause is not shown, a district court may consider factors such as: (i) actual notice of the legal action; (ii) prejudice to the defendant; (ii) the statute of limitations on the underlying causes of action; (iv) the conduct of the defendant; (v) whether the plaintiff is represented by counsel, and (vi) any other factor that maybe relevant." *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009).

Plaintiff here does not even acknowledge that service was untimely, much less make a showing of good cause for the failure. Nevertheless, the Court elects to use its discretion to extend the time for service by nine days to December 6, 2019, when Mr. McBrayer was served. In so doing, the Court assumes for purposes of *this* Motion, but does not find, that service to Defendant through Mr. McBrayer was proper and that Defendant has had actual notice of the legal action. At this point, Plaintiff's claims would be barred by the statute of limitations if the time for service is not extended. *See Gifford v. City of Jersey City*, No. 18-5422, 2019 WL 1579520, at *5 (D.N.J. Apr. 12, 2019) (collecting cases and holding that claims under the ADA and NJLAD are subject to a two-year statute of limitations). Assuming that Defendant has had notice of this lawsuit but chose not to respond, and given that Plaintiff attempted to serve Defendant within the 90-days timeframe and ultimately missed the deadline by just nine days, the Court will exercise its discretion under Rule 4(m) and retroactively enlarge the time to serve to December 6, 2019.

To be clear, however, the Court's willingness to extend time for service does not relieve Plaintiff from her obligation to address the issues surrounding Mr. McBrayer's authority to receive service, as discussed above.

(ii) disparate treatment under the ADA; (iii) failure to make reasonable accommodations under the ADA; (iv) retaliatory termination under NJLAD; (v) disparate treatment under NJLAD; and (vi) failure to make reasonable accommodations under NJLAD. (*See generally* Compl.; Motion at 2). This Court has twice asked Plaintiff to address whether and how the Complaint sufficiently alleges legitimate causes of action such that her motion for default judgment should be granted. (*See* D.E. Nos. 6 & 8). In her initial motion, Plaintiff stated in a conclusory manner that "[she] has clearly set forth the following causes of action against the Defendant." (D.E. No. 7-2 at 2). The Court's April 2021 Letter Order reiterated that "[w]ithout so much as stating the elements of her claims" and "pointing to factual allegations supporting each element," Plaintiff did not show that she sufficiently stated the alleged causes of action. (April 2021 Letter Order at 3).

In her instant Motion, while Plaintiff now organizes her factual allegations under general headings for each claim, she still does not identify the specific elements for her alleged causes of action under the ADA and NJLAD, nor has Plaintiff explained how the facts as alleged in the Complaint make her claims facially plausible. (*See* Motion at 2–3). To be clear, for purposes of pleading sufficiency, the Court need not conduct "a point-by-point consideration of the elements of a *prima facie* case" of the claims. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). But Plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id.* Because Plaintiff repeatedly disregards the Court's directive to identify the necessary elements of her Federal and State claims, as well as the pertinent factual support as alleged in the Complaint, Plaintiff's Motion must be denied for this additional reason.[5]

---

[5] By way of example, to assert a claim of disparate treatment under the ADA, Plaintiff must allege that she: (i) is disabled within the meaning of the ADA; (ii) can perform the essential functions of her job with or without reasonable accommodations; and (iii) suffered an adverse employment action as a result of [her] discrimination based on [her] disability. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)). To plead a claim of failure to accommodate,

**C.     Damages**

As with other portions of the Motion, the Court has twice directed Plaintiff to provide evidence to support the adequacy of her damages request; Plaintiff ignored the Court's Orders both times. In particular, the Court put Plaintiff on notice in its June 2020 Letter Order that, unlike with factual allegations, "[a] court does not accept as true allegations pertaining to the amount of damages." (June 2020 Letter Order at 1). When Plaintiff did not so much as make an allegation of her damages amount, the Court, in its April 2021 Letter Order, specifically informed Plaintiff that she must raise arguments "and *submit supporting evidence* regarding her damages, or risk waiving the issue." (*See* April 2021 Letter Order at 4 (emphasis added)); *see also* Fed. R. Civ. P. 55(b)(2); *Davis v. Comm'r Soc. Sec.*, 849 F. App'x 354, 359 (3d Cir. 2021); *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015). However, in the instant Motion, Plaintiff merely includes a calculation of her wage loss, which allegedly totals

---

a plaintiff must allege that "(1) [s]he was disabled and h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Accordingly, both claims under the ADA require Plaintiff to plead sufficient facts to support that she qualifies as a person with a disability, which in turn requires Plaintiff to allege that: (i) she suffers from a physical or mental impairment; (ii) that impairment limits a major life activity; and (iii) the limitation is substantial. 42 U.S.C. § 12102(1)(A).

It is unclear how Plaintiff's peptic ulcer, as alleged, substantially limits her major life activities. The Complaint merely states that "the major life activities affected by peptic ulcers include, but are not limited to, performing manual tasks, eating, sleeping, concentrating, and working." (Compl. ¶ 24). Not only must the Court disregard such conclusory statements under Rule 12(b)(6), *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012), but also this allegation does not address how peptic ulcers affected *Plaintiff's* life activities at all. Furthermore, while Plaintiff alleges that peptic ulcers affected her work, which led to her request for accommodation, she also alleges that "[a]t the time of her termination, Plaintiff had been working for the practice for approximately fifteen (15) years and had always fulfilled her job duties and performed well." (Motion at 2 (citing Compl. ¶ 38)). It is not apparent whether Plaintiff alleges that the major life activity affected by her peptic ulcer was working, and, if so, how such an allegation can be squared with her allegation that she "fulfilled her job duties and performed well." *See Leone v. N. Jersey Orthopaedic Specialists, P.A.*, No. 11-3957, 2012 WL 1535198, at *4 (D.N.J. Apr. 27, 2012) ("If Plaintiff's alleged 'major life activity' is working, then her allegation—that she is and was 'fully capable of performing all aspects of her job'—directly contradicts the theory that [p]laintiff's [alleged disability] 'substantially affected' her ability to engage in the major life activity at issue."). Thus, it is doubtful whether the Complaint sufficiently alleges facts to raise a reasonable expectation that discovery will reveal evidence that Plaintiff is disabled within the meaning of the ADA. *See Connelly*, 809 F.3d at 789.

$9,760,[6] and an unspecified amount of medical bills resulting from her termination. (Motion at 4). Plaintiff still has not provided any evidence to support her alleged damages. Plaintiff is put on notice for the last time that the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Belmonte v. Spitzer*, No. 09-4715, 2010 WL 2195651, at *1 (D.N.J. May 27, 2010) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). That is, even if Plaintiff prevails on default, "she is not automatically entitled to the damages [she] originally demanded." *Rainey v. Diamond State Port Corp.*, 354 F. App'x. 722, 724 (3d Cir. 2009) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990)). Rather, Plaintiff must *prove* that she is entitled to damages as defaults are only treated as "admissions of the facts alleged." *Id.*

Accordingly, with any renewed motion for default judgment, Plaintiff must submit sufficient evidence, such as her pay stubs, to show her annual or weekly salary at The Dermatology Group, as well as evidence to show her subsequent salary at SKC Dermatology and Corederm. To the extent Plaintiff intends to seek recovery for her medical expenses, she must also submit evidence showing the amount of money she paid for her medical needs.

### III. CONCLUSION

Based on the foregoing, Plaintiff's Motion is DENIED *without prejudice*. Plaintiff has had ample opportunities to address the deficiencies discussed herein, but the Motion remains woefully short of meeting the applicable standards to obtain a default judgment. The Court will, however, allow Plaintiff one final attempt to meet her required burden. If Plaintiff wishes to file a third motion for default judgment, she must address the sufficiency of service with legal and factual

---

[6] The Court notes that Plaintiff's math is incorrect. Plaintiff alleges that, since her termination, she worked at Corederm as a receptionist from February 28, 2018, through April 2021 and made about $1,100.00 a week. (Motion at 4). Based on a weekly loss of $23 for 164 weeks, her total loss equals $3,772, as opposed to $4,772, as Plaintiff asserts.

support, identify all applicable elements for each of the six asserted causes of action, identify the factual underpinnings, as alleged in the Complaint, supporting the asserted claims, and submit any evidence to support her damages claims. Alternatively, Plaintiff has the option to address the sufficiency of service, drop any insufficiently pleaded claims, address the sufficiency of the remaining causes of action, and submit proper evidence for her damages claims. To the extent that Plaintiff intends to file an amended complaint to address any pleading and service deficiencies, she must file a motion in accordance with this Court's Local Civil Rules, including Rules 7.1 and 15.1. If the motion to amend the complaint is granted, Plaintiff must re-serve Defendant. Regardless of how Plaintiff plans to proceed, any continuing failure to cure the deficiencies identified by the Court will result in a ruling against Plaintiff and, when proper, a closure of her case. An appropriate Order accompanies this Opinion.

Date: September 20, 2021

s/ *Esther Salas*  
**Esther Salas, U.S.D.J.**